UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION


KATHLEEN SHAFFER
    Plaintiff

-vs-                                      Case No.
                                          Hon.
                                          **DEMAND FOR JURY TRIAL**

GIOVE LAW OFFICE, P.C.,
MRS. ZALINSKY,
(AKA SHERRY ANDERSON)
    Defendants.

## COMPLAINT & JURY DEMAND

*Kathleen Shaffer states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Kathleen Shaffer who resides in Chesterfield Township, Michigan.

4. The Defendants to this lawsuit are as follows:

    a.    Giove Law Office, P.C. ("Giove Law") which is a professional corporation and collection agency doing business in Michigan.

1

    b.     Mrs. Zalinsky, ("Mrs. Zalinsky") also known as Sherry Anderson, who is an individual debt collector and agent of Giove Law Office.

## Venue

5.    The transactions and occurrences which give rise to this action occurred in Macomb County.

6.    Venue is proper in the Eastern District of Michigan.

## General Allegations

7.    Some time in 2007 or 2008, Giove Law was engaged by First American Investment Company to collect a debt allegedly owed by Kathleen Shaffer; alternatively some time in 2007 or 2008, Giove Law purchased a debt previously held by Peach Direct or an unknown debt buyer which was allegedly owed by Kathleen Shaffer.

8.    Giove Law sent Kathleen Shaffer a collection letter dated January 8, 2008, demanding that she pay $2, 591.69 on the account.

9.    On January 25, 2008, Mrs. Shaffer made arrangements with Giove Law, through its agent Mr. Anderson, to pay $100.00 that day; and a final settlement payment of $1,195.00 via electronic check to be made on February 25. 2008.

10.    Mrs. Shaffer gave Giove Law her checking account information, including the name of her bank, account number and routing information.

11.    The January 25, 2008, payment was made by electronic check from Mrs. Shaffer's checking account and Giove Law received $100.00 in funds.

12.    Mrs. Shaffer's husband works in the Detroit automotive industry. Throughout 2007 and 2008, Mr. Shaffer has been suffering from a reduced work schedule and consequently reduced income.

13. In February 2008, Mr. Shaffer worked lower than expected hours.

14. On Wednesday morning, February 27, 2008, Mrs. Shaffer called Giove Law and reached Mrs. Zalinskly.

15. She informed Mrs. Zalinsky that because of her husband's reduced work schedule, she could not make the $1,195.00 payment and that she needed to make different arrangements to pay the account.

16. Mrs. Shaffer advised Giove Law to halt the processing of the electronic check scheduled for payment on Friday, February 29, 2008.

17. This constituted legal notice to Giove Law that it was not authorized to withdraw sums from Mrs. Shaffer's account.

18. Mrs. Zalinsky told Mrs. Shaffer that Giove Law could not stop the payment or change the amount in any way.

19. Mrs. Zalinsky's statement was false. Giove Law had the ability to stop the processing of the electronic check.

20. Mrs. Shaffer was alarmed by Mrs. Zalinsky's statement and concerned about Giove Law withdrawing unauthorized funds from her account.

21. Mrs. Shaffer told Mrs. Zalinsky that if the check was processed it would bounce because her mortgage payment still needed to be paid out of the funds in her checking account.

22. Mrs. Zalinsky then advised Mrs. Shaffer that she would need to check with the attorney and then placed Mrs. Shaffer on hold for several minutes.

23. Mrs. Zalinsky did not contact an attorney and her statement was made to convey a false sense of urgency for Mrs. Shaffer to pay and a false threat that Giove Law would take legal

action in regard to the account if Mrs. Shaffer stopped payment on the check.

24. When Mrs. Zalinsky returned to the line, she offered to accept $500.00 on the electronic check instead of $1,195.

25. Mrs. Shaffer stated that she would review her bills and call back the next day.

26. On Thursday, February 28, 2008, Mrs. Shaffer called Giove Law and spoke to Mrs. Zalinsky.

27. Mrs. Shaffer told Mrs. Zalinsky that she could not pay $500.00 on February 29, 2008. She offered to make $100.00 monthly payments until the balance was paid off.

28. Mrs. Zalinsky placed Mrs. Shaffer on hold for several moments.

29. When Mrs. Zalinsky came back on the line she stated that she had called the attorney and that he had done an asset and liability search and determined that the funds were available.

30. Mrs. Zalinsky then stated that the check runs tomorrow and if the funds are not there, "you will have a lawsuit upon you in 7 days."

31. Mrs. Shaffer then said the only reason the funds are there now is because her mortgage payment had not yet cleared.

32. Mrs. Zalinsky then repeated that it went to the attorney, the attorney reviewed it, "if the check comes back that it is bounced the file goes back to the attorney tomorrow and there will be a lawsuit against you in 7 days."

33. Mrs. Shaffer stated that if they were going to put the check through, she would have to put a stop payment on her check.

34. Mrs. Zalinsky then stated that "if you put a stop payment on the check, you will have a lawsuit against you within 7 days."

4

35. Mrs. Shaffer continued to seek a payment arrangement with Mrs. Zalinsky whereby she could make $100.00 monthly payments.

36. Mrs. Zalinsky refused this arrangement.

37. Mrs. Shaffer called her bank and instructed it to refuse payment of any check to Giove Law.

38. Mrs. Shaffer's bank charged her a $32.00 stop payment charge.

39. During the course of all of the calls with Mrs. Shaffer, Mrs. Zalinsky did not contact an attorney and her statements that she did were false and a ruse to coerce Mrs. Shaffer into making payment on the account.

40. Giove Law has no attorneys in Michigan or attorneys licensed to practice law in Michigan.

41. Giove Law did not file a lawsuit against Mrs. Shaffer within 7 days of February 29, 2008, or any time thereafter.

42. All of Mrs. Zalinsky's statements that Giove Law would initiate a lawsuit against Mrs. Shaffer were false statements and false threats of legal action and intended to coerce payment from Mrs. Shaffer.

43. On March 10, 2008, Mrs. Shaffer called Giove Law again to inquire whether a lawsuit had been filed against her.

44. She asked to speak to Mrs. Zalinsky and Giove Law's agent stated that there was no Mrs. Zalinsky at the office. He said that there was a Sherry Anderson.

45. A Giove Law agent eventually connected Mrs. Shaffer to a debt collector who identified herself as Mrs. Zalinsky.

46. Mrs. Zalinsky acknowledged that Giove Law did not file a lawsuit against Mrs. Shaffer.

47. Rather, Mrs. Zalinsky stated that the account was in legal review.

48. Mrs. Zalinsky stated that the legal department would send out a "Legal 7" day letter.

49. Mrs. Zalinsky explained that the letter states that she had 7 days to comply and make a payment. If she fails to make a payment the file is returned to the attorney and the attorney hires an attorney in your area and proceeds.

50. This statement constitutes a false threat to take legal action.

51. Mrs. Zalinsky also explained that the reason that Giove could take no less than a $500.00 payment was because Mrs. Shaffer had earlier authorized an electronic check of $1,195.00. Mrs. Zalinsky stated that the attorneys had paid that amount our of their escrow account and that amount needed to be recovered.

52. This was a false representation. The Giove Law attorneys did not pay $1,195.00 out of their escrow account.

53. Mrs. Zalinsky's explanation was a false representation that the alleged payment by attorneys resulted in Mrs. Shaffer's loss of a claim or defense to payment of the debt.

54. Mrs. Zalinsky also stated that Giove Law could not take lesser amounts because it was not a collection agency and cannot work like a collection agency.

55. This was a false statement. Giove Law is a collection agency and works like a collection agency.

56. Mrs. Zalinsky also told Mrs. Shaffer, "Believe me. I am not handing you any lines... anything I tell you isn't because I am sitting here trying to make you pay for my benefit. Its not."

57. Mrs. Zalinsky's statement that she was not handing Mrs. Shaffer any lines was a false statement. Mrs. Zalinsky made multiple false statements throughout her communications

with Mrs. Shaffer, as set forth above.

58. Mrs. Zalinsky's statement that she was not trying to make Mrs. Shaffer pay for her benefit was false. Mrs. Zalinsky receives commission, bonus or other valuable employment compensation for collecting amounts from consumers.

59. During the course of the call, Mrs. Zalinsky referred to herself as Sherry Anderson. She further declared that "everything that I've told you isn't something that Sherry Anderson is making up....so I can get you to pay."

60. She also declared that her statements were not made so that you are afraid of the attorneys office.

61. Mrs. Zalinsky again declared that they were not a collection agency and that "when its with an attorneys office it is a whole new ball game."

62. Mrs. Zalinsky further stated that because Mrs. Shaffer had withdrawn authorization for payment on the electronic check, "that's when it gets ugly."

63. Mrs. Zalinsky's statements were false. Her references to attorneys were made to make Mrs. Shaffer fearful that she would be sued.

64. Further, Mrs. Zalinsky falsely stated that Giove Law was not a collection agency. It is a collection agency.

65. Finally, Mrs. Zalinsky told Mrs. Shaffer that the account is in attorney review, that a 7 day letter was imminent which would demand 80% of the balance; and payment of that amount was the only way that will prevent an attorney here from getting an attorney in your state to "pursue you legally. And that is the truth. It will go out."

66. Mrs. Zalinsky's statement that a 7 day letter was imminent was false. To this date, Giove

Law has not sent out a 7 day letter.

67. Mrs. Zalinsky continuously sought a $500.00 payment from Mrs. Shaffer.

68. When Mrs. Shaffer told her she could only pay $100.00, Mrs. Zalinsky stated she would go down the hall and talk to the attorney.

69. Several moments later, Mrs. Zalinsky stated that the attorneys refused the offer because the legal process has already started and there was no reason to accept $100.00 when they know they will get the full amount of the account.

70. Mrs. Zalinsky also stated "I'm not going to sit here and tell you anything that isn't true. That would be against the law for me to do that."

71. Mrs. Zalinsky did not contact any attorney during the course of the telephone communication and Mrs. Zalinsky's statement that she had was intended to convey a false sense of urgency that Mrs. Shaffer pay and constituted a threat to take legal action that it did not intend to take.

72. No Giove Law attorney has reviewed Mrs. Shaffer's file or account.

73. Giove Law has not sent Mrs. Shaffer a "7 day letter."

74. Giove Law did not intend to file a lawsuit against Mrs. Shaffer nor did it intend to send the account to a Michigan attorney to file a lawsuit.

75. Neither Giove Law nor any agent of Giove Law has filed a lawsuit against Mrs. Shaffer.

76. The entire course of the telephone communication was designed to falsely represent that there was active attorney involvement in Mrs. Shaffer's account.

77. Mrs. Zalinsky falsely stated that Giove Law was not a collection agency.

78. Mrs. Zalinsky falsely stated that she was telling the truth.

79. Mrs. Zalinsky knows that it is illegal to tell falsehoods during the course of collecting a debt and her statements were not a result of *bona fide* error.

80. As a result of the acts alleged above, Plaintiff has suffered damages.

### **COUNT I – Fair Debt Collection Practices Act (Giove Law and Mrs. Zalinsky)**

81. Mrs. Shaffer incorporates the preceding allegations by reference.

82. At all relevant times Defendants– in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

83. Defendants are "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

84. Defendants' foregoing acts in attempting to collect this alleged debt against Mrs. Shaffer constitute violations of the FDCPA including, but not limited to 15 U.S.C. §1692d, e(2), e(3), e(5) and (f), (f)(6)(B) and f(10).

85. Mrs. Shaffer has suffered damages as a result of these violations of the FDCPA.

### **COUNT II – Michigan Occupational Code (Giove Law) as alternative to claims under the Michigan Collection Practices Act**

86. Mrs. Shaffer incorporates the preceding allegations by reference.

87. Giove Law is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

88. Mrs. Shaffer is a debtor as that term is defined in M.C.L. § 339.901(f).

89. Giove Law's foregoing acts in attempting to collect this alleged debt against Mrs. Shaffer constitute violations of the Occupational Code including but not limited to the following M.C.L. § 339.901   (a). (e), (f), (g) and (q).

90. Mrs. Shaffer has suffered damages as a result of these violations of the Michigan

9

Occupational Code.

91. These violations of the Michigan Occupational Code were willful.

### COUNT III – Michigan Collection Practices Act (Giove Law) as alternative to claims under the Michigan Occupational Code

92. Mrs. Shaffer incorporates the preceding allegations by reference.

93. Giove Law is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

94. Giove Law's foregoing acts in attempting to collect this alleged debt against Mrs. Shaffer constitute violations of the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.* including, but are not limited to M.C.L. § 445.252(a), (e), (f), (g) and (q).

95. Mrs. Shaffer has suffered damages as a result of Giove Law's violations of the Michigan Collection Practices Act.

96. Giove Law's violations of the Michigan Collection Practices Act were willful.

### Demand for Jury Trial

97. Plaintiff demands trial by jury in this action.

### Demand For Judgment for Relief

98. *Accordingly, Mrs. Shaffer requests that the Court grant:*

   a. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

   b. *Statutory damages.*

   c. *Treble damages.*

   d. *Statutory costs and attorney fees.*

                                        Respectfully Submitted,

                                        LYNGKLIP & ASSOCIATES
                                        CONSUMER LAW CENTER, PLC

                                        By:    <u>S/ Julie A. Petrik</u>
                                        Julie A. Petrik (P47131)
                                        Attorney For Kathleen Shaffer
                                        24500 Northwestern Highway, Ste. 206
                                        Southfield, MI 48075
                                        (248) 208-8864
                                        JuliePetrik@Att.Net

Dated: April 8, 2008